## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD T. HUGHES and CATHIE L. HUGHES, husband and wife, | ) ) ) |
| Plaintiffs, | ) CIVIL ACTION NO. 3:2005-357 |
| v. | ) ) JUDGE GIBSON |
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### SYNOPSIS

This matter comes before the Court on the Motion for Partial Summary Judgment filed by the Plaintiffs, Richard and Cathie Hughes (Document No. 15), and the Motion for Summary Judgment filed by the Defendant, State Farm Fire & Casualty Company ("State Farm") (Document No. 18). For the reasons that follow, the Court will deny the Motion for Partial Summary Judgment filed by the Plaintiffs (Document No. 15) and grant the Motion for Summary Judgment filed by State Farm (Document No. 18).

### BACKGROUND

The Plaintiffs purchased a rental dwelling homeowner's insurance policy from State Farm on January 29, 2004. (Document Nos. 17, p. 1, ¶ 1, 26, p. 1, ¶ 1). The policy was given the number 98-EC-0912-5, and it was in effect between January 29, 2004, and January 29, 2005. (Document Nos. 20,

1

p. 2, ¶ 5, 24, pp. 1-2, ¶ 5). At some point between December 22, 2004, and December 31, 2004, a sinkhole developed below the Plaintiffs' dwelling, causing severe damage to the structure. (Document Nos. 20, p. 1, ¶ 2, 24, p. 1, ¶ 2). The Plaintiffs reported this damage to State Farm on January 5, 2005. (Document Nos. 17, p. 2, ¶ 4, 26, p. 2, ¶ 4). The Plaintiffs' claim was recorded as claim number 38-P723-642. (Document Nos. 20, p. 3, ¶ 10, 24, p. 2, ¶ 10). Subsequent to an investigation, State Farm denied the claim in a letter dated February 25, 2005. (Document Nos. 17, p. 2, ¶ 4, 20, p. 4, ¶ 12, 24, p. 2, ¶ 12, 26, p. 2, ¶ 4).

The Plaintiffs' dwelling was damaged so severely that it ultimately collapsed. (Document Nos. 17, p. 3, ¶ 7, 26, p. 2, ¶ 7). The Plaintiffs obtained an expert report from Richard T. Parizek, P.E. ("Parizek"), a hydrogeologist/environmental geologist. (Document Nos. 20, p. 4, ¶ 13, 24, p. 2, ¶ 13). After inspecting the Plaintiffs' property, Parizek reported that he had observed broken water lines within the "crawl space." (Document No. 21-3, p. 6). He apparently believed that the damage to the Plaintiffs' dwelling resulted from broken water pipes, and that "[t]he lack of a floor drain within the crawl space" eliminated any chance for the controlled removal of the water flowing from the broken pipes. *Id.* Parizek opined that the loss of foundational support for the Plaintiffs' dwelling "was caused by the erosional removal of soil into solution voids[,]" and that this phenomenon had been "induced by the presence and actions of the uncontrolled release of water within the crawl space." (*Id.*, p. 7).

During the course of its investigation, State Farm retained the services of Daniel Grieco, P.E. ("Grieco"), a professional engineer. (Document Nos. 20, p. 4, ¶ 11, 24, p. 2, ¶ 11). Grieco did not believe that the damage to the Plaintiffs' dwelling was caused by water saturation. (Document No. 21-5, p. 4). In his view, the water lines were broken because of the collapse of the structure. *Id.* He

2

indicated that the cause of the collapse could not be determined without "a subsurface investigation with suitable test borings[.]" *Id.*

Believing that the denial of their claim constituted a breach of their insurance contract with State Farm, the Plaintiffs commenced this action against State Farm in the Pennsylvania Court of Common Pleas of Clearfield County. (Document No. 1-2). The complaint included both a count for breach of contract under Pennsylvania law and a count under 42 Pa.C.S. § 8371, which is Pennsylvania's Bad Faith Statute. (*Id.*, pp. 3-5, ¶¶ 13-21). State Farm filed a notice of removal in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446 on September 6, 2005. (Document No. 1). The Plaintiffs are citizens of Pennsylvania, and State Farm is an insurance company with its principal place of business in Illinois. (Document No. 1-2, p. 1, ¶¶ 1-3). The amount in controversy is $80, 812.50. (*Id.*, p. 4). Therefore, jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1).

On March 15, 2006, upon the consent of the parties, the Court dismissed the count of the complaint which had been brought pursuant to 42 Pa.C.S. § 8371. (Document No. 11). Consequently, the only remaining count is the breach of contract claim.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552-57, 91 L.Ed.2d 265, 273-280 (1986); Fed.R.Civ.P. 56(c). An issue of material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211-212 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani [Sav. And Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638 (3d Cir. 1993)]."

*Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

3

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

## **DISCUSSION**

Since jurisdiction in this case is predicated on the diverse citizenship of the parties, the Court must apply the choice of law rules applicable in the Commonwealth of Pennsylvania. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496-497, 61 S.Ct. 1020, 1021-1022, 85 L.Ed. 1477, 1480-1481 (1941). The parties apparently agree that the substantive law of Pennsylvania is applicable to this dispute. (Document Nos. 16, pp. 4-9, 19, pp. 7-16). Therefore, the Court will evaluate the substantive legal issues in this case in accordance with Pennsylvania law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78-80, 58 S.Ct. 817, 822-823, 82 L.Ed. 1188, 1194-1195 (1938).

The law of Pennsylvania with respect to the interpretation of insurance contracts has been firmly established. The Pennsylvania Supreme Court explained the applicable standards in *Madison Construction Co. v. The Harleysville Mutual Insurance Co.*, 735 A.2d 100 (Pa. 1999):

The task of interpreting an insurance contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties

4

as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Madison Construction Co.*, 735 A.2d at 106. The language of an insurance contract is deemed to be ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (Pa. 1986). The Court cannot resolve this question in the abstract, since "contractural terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Construction Co.*, 735 A.2d at 106. In making this determination, the Court "must not rely upon a strained contrivancy" to find an ambiguity, since "scarcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity." *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982). Where a genuine ambiguity exists, however, the ambiguous policy provision must be construed in favor of coverage regardless of whether that construction is right or wrong. *Employers Mutual Casualty Co. v. Loos*, 476 F.Supp.2d 478, 487 (W.D.Pa. 2007). In *Prudential Property & Casualty Insurance Co. v. Sartno*, 903 A.2d 1170 (Pa. 2006), the Pennsylvania Supreme Court explained:

The instant matter is a prime example of language in a policy that can be understood in more than [one] way. Sartno prefers one interpretation; Prudential favors the other. Regardless of which one is "right" or "wrong," the fact is that because each interpretation is reasonable, the exclusionary term is ambiguous, and we must construe it in favor of the insured.

*Prudential Property*, 903 A.2d at 1177. Thus, a policy provision that is truly ambiguous must be construed in favor of coverage even if the alternative construction appears to be more reasonable.

5

Where an issue arises concerning matters which have not been directly addressed by the Pennsylvania Supreme Court, this Court must predict how the Pennsylvania Supreme Court would decide the same issue. *Employers Mutual Casualty Co.*, 476 F.Supp.2d at 487. In so doing, the Court must consider decisions of both lower Pennsylvania courts and decisions of federal courts applying Pennsylvania law. *Id.* The Court may also consider decisions from courts in other states addressing similar legal principles, to the extent that such principles are not inconsistent with the law of Pennsylvania. In many contexts, Pennsylvania courts have looked to the applicable law in other jurisdictions for guidance in ascertaining the law of Pennsylvania. *Sabad v. Fessenden*, 825 A.2d 682, 695 (Pa.Super.Ct. 2003). Indeed, the Pennsylvania Supreme Court *requires* attorneys to discuss related precedents from other states when briefing the interpretation of analogous provisions of the Pennsylvania Constitution. *Commonwealth v. Edmonds*, 586 A.2d 887, 895 (Pa. 1991). Consequently, this Court's consideration of decisions from other jurisdictions for the purpose of predicting how the Pennsylvania Supreme Court would decide a particular issue is entirely proper. It must be remembered, however, that decisions construing provisions of insurance contracts must always be read in context. Decisions interpreting materially different contractural language, even under similar sets of facts, are of little value in determining the meaning of the particular insurance contract at issue in a given case. *Trunzo v. Allstate Insurance Co.*, 2006 WL 2773468, at *10, 2006 U.S. Dist. LEXIS 68566, at *33 (W.D.Pa. September 25, 2006)("The court is not dealing with a constitutional or statutory provision which applies equally to *all* parties. Instead, the court is being asked to construe a *particular* insurance contract agreed to by *particular* parties.")(emphasis in original).

Most jurisdictions construe ambiguous coverage clauses broadly and ambiguous exclusionary

6

clauses narrowly. *York Insurance Co. v. Williams Seafood of Albany, Inc.*, 223 F.3d 1253, 1255 (11th Cir. 2000); *American States Insurance Co. v. Powers*, 262 F.Supp.2d 1245, 1249-1250 (D.Kan. 2003); *Jobe v. International Insurance Co.*, 933 F.Supp. 844, 863 (D.Ariz. 1995); *D.D. v. Insurance Co. of North America*, 905 P.2d 1365, 1368 (Alaska 1995). Exceptions to exclusions are typically construed broadly, since they are provisions extending insurance coverage. *TRB Investments, Inc. v. Fireman's Fund Insurance Co.*, 145 P.3d 472, 477 (Cal. 2006). For purposes of this case, the Court assumes that the Pennsylvania courts would adhere to these general principles of insurance law. *Pecorara v. Erie Insurance Exchange*, 596 A.2d 237, 239 (Pa.Super.Ct. 1991)("If an ambiguity exists as to an exclusion provision, the language is to be strictly construed against the insurer.").

The issue presently before the Court is quite narrow. The parties disagree as to whether State Farm is obliged to extend coverage for the damage to the Plaintiffs' dwelling under the rental dwelling policy. The Court's analysis begins with the language of the policy, which includes both an "Additional Coverages" section and a "Losses Not Insured" section. (Document Nos. 17-2, pp. 4-8, 21-2, pp. 6-10). The relevant portions of the policy provide:

## ADDITIONAL COVERAGES

\*\*\*

11. **Collapse**. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, volcanic action, falling objects, weight of ice, snow or sleet, water damage, breakage of building glass, all only as insured against in this policy;

(1) falling objects does not include loss of or damage to:

7

(a) personal property in the open; or

(b) the interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object;

(2) water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam;

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

\*\*\*

## SECTION I–LOSSES NOT INSURED

\*\*\*

We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

\*\*\*

b. **Earth Movement,** meaning the sinking, rising, shifting, expanding, or contracting of earth, all whether combined with water or not. Earth movement includes but is not

8

limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosions or lava flow, except as specifically provided in **SECTION I, ADDITIONAL COVEREGES** for **Volcanic Action**.

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials resulting from earth movement.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for direct loss by fire, explosion, or theft resulting from water damage.

(Document Nos. 17-2, pp. 4-7, 21-2, pp. 6-9). The Plaintiffs believe that they are entitled to coverage

for their losses pursuant to the "Additional Coverages" section of the policy. (Document No. 16, pp.

2-3). State Farm believes that coverage for the damage to the Plaintiffs' dwelling is specifically

excluded under the "Losses Not Insured" section of the policy. (Document No. 19, pp. 4-16).

The arguments raised by the Plaintiffs in support of their position are rather straightforward.

First, they argue that since the language in the policy purporting to provide coverage for the collapse

of their dwelling can be found in the "Additional Coverages" section, the language should be construed

to provide coverage "in addition to any exclusion in the agreement." (Document No. 16, p. 3). Second,

9

they argue that they are entitled to coverage under the Pennsylvania Supreme Court's decision in *Steele v. Statesman Insurance Company*, 607 A.2d 742 (Pa. 1992). (*Id.*, pp. 4-7). The Court will address each argument in turn. At the outset, the Court notes that the parties disagree as to whether the damage at issue was *caused by* broken water pipes, or whether the collapse itself *caused* the water pipes to break. (Document Nos. 16, p. 2, 27, pp. 1-2). For purposes of this analysis, however, the Court assumes *arguendo* that the damage was caused by broken water pipes, and that the Plaintiffs correctly present the facts surrounding the collapse of their dwelling.

In support of their position, the Plaintiffs rely on last year's decision in *Hartman v. Motorists' Mutual Insurance Company*, 2006 U.S. Dist. LEXIS 1719 (W.D.Pa. January 19, 2006). (*Id.*, pp. 7-9). In *Hartman*, the Court determined that an ambiguity existed as to whether an insurance policy purporting to exclude coverage for damage caused by pollution while purporting to provide coverage for damage caused by liquids provided coverage for damages caused when a ceiling-mounted oil furnace leaked five gallons of home heating oil into a building. *Hartman*, 2006 U.S. Dist. 1719, at *1, 22-23. The Court concluded that the ambiguity needed to be resolved in favor of the insured and against the insurer. *Hartman*, 2006 U.S. Dist. LEXIS 1719, at *22-23.

The instant case is materially different from *Hartman*. The policy is not ambiguous as to whether the "Additional Coverages" section provides coverage "over and above" the coverage otherwise provided. (Document No. 16, p. 7). First of all, the very language in the "Additional Coverages" section upon which the Plaintiffs rely provides that *water damage* is covered "*only as insured against in this policy*[.]" (Document Nos. 17-2, p. 5, 21-2, p. 7). Secondly, the Earth Movement Exclusion upon which State Farm relies specifically makes an exception for "Volcanic Action," which

10

is listed in the "Additional Coverages" section. (Document Nos. 17-2, pp. 5, 7, 21-2, pp. 7, 9)("Earth movement also includes volcanic explosions or lava flow, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Volcanic Action**."). If the "Additional Coverages" section were meant to provide coverage "over and above" the coverage specifically excluded in the "Losses Not Insured" Section, it would have been completely unnecessary for State Farm to make an explicit exception for "Volcanic Action" in the definition of the term "earth movement." There are eleven listings in the "Additional Coverages" section, and only the "Volcanic Action" listing is referenced in the definition of the term "earth movement." (Document Nos. 17-2, pp. 4-7, 21-2, pp. 6-9). The only reasonable construction of the words "Additional Coverages" is that the section provides coverage in *addition* to the coverage already provided for one's dwelling, personal property, and loss of rents. (Document Nos. 17-2, pp. 3-4, 21-2, pp. 5-6). The Court also notes that the "Additional Coverages" section comes *before* the "Losses Not Insured" section of the policy, thereby providing support for State Farm's argument that the exclusions can serve to preclude coverage that would otherwise be available under the "Additional Coverages" section. (Document Nos. 17-2, pp. 4-8, 21-2, pp. 6-10). Therefore, the Court is not persuaded by the Plaintiffs' argument regarding the interaction between the "Additional Coverages" and "Losses Not Insured" sections of the policy.

The Court's determination that the "Additional Coverages" section does not provide coverage "over and above" the exclusions, of course, does not end the inquiry. It remains to be determined whether the damage caused to the Plaintiffs' dwelling is within the earth movement exclusion. Similar exclusions contained in insurance policies have sometimes been construed to preclude coverage only for earth movements resulting from natural causes, and to permit coverage otherwise available for earth

11

movements resulting from "man-made" activities. *Peters Township School District v. The Hartford Accident and Indemnity Company*, 833 F.2d 32, 33-38 (3d Cir. 1987)(recognizing such a distinction in a case applying Pennsylvania law); *Nautilus Insurance Company v. Vuk Builders, Inc.*, 406 F.Supp.2d 899, 903 (N.D.Ill. 2005)("Although Illinois courts have not had very many opportunities to construe 'subsidence' or 'earth movement' exclusions similar to the one at issue in this case, other jurisdictions generally have found such exclusions to be ambiguous and construed them narrowly in favor of the insured."); *Murray v. State Farm Fire & Casualty Company*, 509 S.E.2d 1, 17-20 (W.Va. 1998)(collecting cases). The Pennsylvania Supreme Court expressly recognized the distinction between earth movements resulting from natural causes and earth movements resulting from man-made causes in *Steele*, holding that a particular insurance policy provided coverage for damages resulting from a man-made earth movement (as opposed to a naturally caused earth movement) notwithstanding the existence of a policy provision excluding coverage for earth movements in a more general sense. *Steele*, 607 A.2d at 743 ("We, therefore, hold that the earth movement exclusion bars coverage for damage (loss) from earth movement due to natural events only. The earth movement exclusion in the 'all-risk' insurance policy issued by Statesman to the Steeles does not bar coverage for damage (loss) from the collapse of the hillside due to a man-made event–construction on adjoining property."). Courts have subsequently relied on *Steele* to highlight the distinction between man-made earth movements and naturally caused earth movements when interpreting similar exclusionary provisions in insurance contracts governed by Pennsylvania law. *T. H.E. Insurance Company v. Charles Boyer Children's Trust d/b/a Boyer's Westwood Lanes*, 455 F.Supp.2d 284, 294-295 (M.D.Pa. 2006); *Totty v. Chubb Corporation*, 455 F.Supp.2d 376, 383-385 (W.D.Pa. 2006).

12

What must be remembered, however, is that it is an insurance *contract* that the Court is being asked to construe. The touchstone of the inquiry is the intent of the contracting *parties*, not the intent of a legislative body. *Trunzo*, 2006 WL 2773468, at \*10, 2006 U.S. Dist. LEXIS 68566, at \*33 ("The court is not dealing with a constitutional or statutory provision which applies equally to *all* parties. Instead, the court is being asked to construe a *particular* insurance contract agreed to by *particular* parties.")(emphasis in original). For this reason, while decisions of the Pennsylvania courts certainly inform the inquiry as to the applicable law in Pennsylvania (and while decisions of the Pennsylvania Supreme Court are binding on this Court with respect to matters of Pennsylvania law), the disposition of this case is not controlled by precedents involving the interpretation of materially different contractual language.[1] In various instances, courts have opined that the language of State Farm's earth movement exclusion is unique, thereby necessitating a different determination as to whether it is broad enough to include man-made earth movements. *Fayad v. Clarendon National Insurance Company*, 899 So.2d 1082, 1087, n. 2 (Fla. 2005)(distinguishing cases involving State Farm policies on the ground that State Farm uses specific language designed to broaden the scope of the earth movement exclusion); *Chase v. State Farm Fire & Casualty Company*, 780 A.2d 1123, 1128 (D.C. 2001)(noting that State Farm's earth movement exclusion contained unique language, thereby warranting a determination that it was unambiguous); *Winters v. The Charter Oak Fire Insurance Company*, 4 F.Supp.2d 1288, 1292 (D.N.M. 1998)("Charter Oak relies on a number of cases based on policies written by State Farm

---

[1] The resolution of this matter would be very different if Pennsylvania had a statutory provision governing the scope of earth movement exclusions in a more uniform sense. *See Julian v. Hartford Underwriters Insurance Company*, 110 P.3d 903, 910-911 (Cal. 2005). Absent an express statutory mandate to the contrary, however, the Court must enforce the insurance contract as written, and must avoid the temptation to construe unique contractural language in accord with materially different (and more typical) contractural language found in other insurance policies.

Insurance Company. These cases are distinguishable in that State Farm uses unique language, not employed in standard all-risk insurance policies, and which differs from that used in the Charter Oak policy at issue here."). With that in mind, the Court now turns to the precise language contained in the State Farm policy.

Under the "Additional Coverages" section of the policy, State Farm insures "for direct physical loss to covered property involving the collapse of a building or any part of a building caused by . . . fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, volcanic action, falling objects, weight of ice, snow or sleet, water damage, breakage of building glass, all only as insured against in this policy[.]" (Document Nos. 17-2, p. 5, 21-2, p. 7). The Plaintiffs evidently believe (and the Court assumes) that the damage to their dwelling was caused by "water damage," which is defined in the policy as the "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam[.]" *Id.* State Farm argues that coverage in this case is precluded by the earth movement exclusion, which excludes coverage for damages caused by "the sinking, rising, shifting, expanding, or contracting of earth, *all whether combined with water or not.*" (Document Nos. 17-2, p. 7, 21-2, p. 9)(emphasis added). The policy makes it clear that, for purposes of the exclusionary language, the term "[e]arth movement includes, but is not limited to, earthquake, landslide, mudflow, *sinkhole*, subsidence and erosion." *Id.* As noted earlier, "earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Volcanic Action**." *Id.* (boldface type in original).

The language that sets State Farm's earth movement exclusion apart from many similar

14

provisions in other insurance contracts is contained in the "lead-in" provision, which makes it clear that State Farm does not insure "under *any* coverage for *any* loss which would not have occurred in the absence of one or more" enumerated excluded events (*i.e.*, ordinance or law, earth movement, water damage, neglect, war, nuclear hazard). *Id.* (emphasis added). The policy unambiguously states that State Farm does not insure for any such loss *regardless of* the cause of the excluded event, other causes of the loss, or "whether other causes acted concurrently or *in any sequence with the excluded event* to produce the loss." *Id.* (emphasis added). The policy at issue in the instant case is very different from the policy at issue in *Steele*, which provided only that Statesman Insurance Company did not cover loss "resulting directly or indirectly from . . . Earth Movement." *Steele*, 607 A.2d at 742. In *Steele*, the Pennsylvania Supreme Court did not conclude that the applicable insurance policy clearly provided coverage under the facts of that case. Instead, it concluded that the relevant policy language was ambiguous, thereby requiring a construction in favor of the insured and against the insurer. *Id.* at 743 ("Although it is arguable that the exclusion is applicable to earth movement due to natural and man-made events, a reasonable insured could conclude that the exclusion is applicable to earth movement due to natural events only. Since the earth movement exclusion is reasonably susceptible to different constructions, it is impossible to determine the intent of the parties as manifested by the written language of the contract of insurance."). Justice Flaherty dissented on the ground that the policy was not ambiguous, and that there was no need to apply Pennsylvania's rule of construction requiring that ambiguities be construed in favor of coverage. *Id.* at 744 (Flaherty, J., dissenting)("In its understandable quest to provide insurance coverage to the insured homeowner, the majority purports to find an ambiguity in the contract language in order to resolve the ambiguity in favor of the insured.").

15

Thus, it is clear that the holding in *Steele* was limited to *ambiguous* earth movement exclusions. The earth movement exclusion in State Farm's policy is not ambiguous.

The Plaintiffs contend (and the Court assumes) that a break in their water pipes resulted in the discharge of more than 100,000 gallons of water, thereby causing a "sinkhole" to develop. (Document No. 16, p. 2). This sinkhole apparently caused the collapse of the Plaintiffs' dwelling. The Court notes that the term "earth movement," as defined in the State Farm policy, expressly includes sinkholes. (Document Nos. 17-2, p. 7, 21-2, p. 9). Therefore, the sinkhole qualifies as an "excluded event" under the policy. *Id.* According to the plain language of the policy, State Farm does not insure for loss resulting from such an excluded event "*regardless of* the cause of the excluded event[,] other causes of the loss[,] or whether other causes *acted concurrently or in any sequence* with the excluded event to produce the loss." *Id.* (emphasis added). Thus, it makes no difference whether the broken pipes *caused* the collapse, or whether the collapse *caused* the pipes to break. The *sequence* of the events is irrelevant, since it is undisputed that the collapse of the Plaintiffs' dwelling was caused by an excluded event (*i.e.*, a "sinkhole" falling within the definition of the term "earth movement"). (Document Nos. 16, p. 2, 19, pp. 1-3).

The Plaintiffs evidently believe that the collapse of their dwelling was the result of "water damage," which is defined as the "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam[.]" (Document Nos. 17-2, p. 5, 21-2, p. 7). If this policy language could be read in isolation, perhaps the Plaintiffs would be correct. Nevertheless, the Court must read the entire policy, not just those portions highlighted by the Plaintiffs. Even under the facts alleged by the Plaintiffs, the damage to their dwelling

16

was the result of an "excluded event." The exclusionary language in the policy is clear and unambiguous as applied to the facts of this case. Accordingly, the Court must give effect to that language. *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers Association Insurance Company*, 517 A.2d 910, 913 (Pa. 1986). The Court's construction of the State Farm policy is in accord with the majority of the courts which have construed the same (or materially similar) policy language. *State Farm Fire & Casualty Company v. Castillo*, 829 So.2d 242, 245-247 (Fla.Dist.Ct.App. 2002); *Chase*, 780 A.2d at 1128-1131; *Rhoden v. State Farm Fire & Casualty Company*, 32 F.Supp.2d 907, 911-913 (S.D.Miss. 1998); *State Farm Fire & Casualty Company v. Bongen*, 925 P.2d 1042, 1045-1048 (Alaska 1996); *Kula v. State Farm Fire & Casualty Company*, 212 A.D.2d 16, 17-21, 628 N.Y.S.2d 988, 989-991 (N.Y.App.Div. 1995); *Alf v. State Farm Fire & Casualty Company*, 850 P.2d 1272, 1274-1278 (Utah 1993); *Schroeder v. State Farm Fire & Casualty Company*, 770 F.Supp. 558, 559-562 (D.Nev. 1991).

In certain instances, courts have found an ambiguity to exist in situations where an exclusionary provision of an insurance policy appears to make coverage under another provision of the policy illusory. *American Concept Insurance Company v. Jones*, 935 F.Supp. 1220, 1226-1228 (D.Utah 1996). The Pennsylvania Supreme Court implicitly recognized the illusory coverage doctrine in *401 Fourth Street, Inc. v. Investors Insurance Group*, 879 A.2d 166 (Pa. 2005), by stating as follows:

> Albeit not argued in any meaningful fashion by Investors Insurance, we also find that the exclusion from the definition of the term "collapse" for "bulging" does not compel summary judgment in favor of Investors Insurance. Although an insurance contract may state that a collapse did not include settling, cracking, shrinking, bulging, or expansion, it is difficult to imagine a collapse that would not include some of these attributes. Thus, the term "collapse" can reasonably be interpreted as not including minor settling, cracking, or bulging, but includes settling, cracking, or bulging that result in the collapse

17

or, pursuant to the language of the policy provision at issue here, immediate collapse, of the structure. Indeed, coverage under the policy language at issue *sub judice* would be illusory and contrary to the intent of the parties if bulging was part of an imminent collapse and yet this condition was excluded from coverage.

*401 Fourth Street*, 879 A.2d at 174, n. 3. Given this language from the Pennsylvania Supreme Court, it is conceivable that an exclusionary provision could be unenforceable because it makes a competing coverage provision illusory (either because the interaction between the two competing provisions creates an ambiguity that must be construed in favor of coverage, or because the application of the exclusionary provision would be in such derogation of the reasonable expectations of the insured as to be manifestly contrary to the intentions of the parties).

In the instant case, however, it is clear that the coverage provided under the "Additional Coverages" section for a collapse is not illusory. Under the State Farm policy, coverage is provided for a collapse caused by "fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, volcanic action, falling objects, weight of ice, snow or sleet, water damage, [or] breakage of building glass[.]" (Document Nos. 17-2, p. 5, 21-2, p. 7). The policy covers a multitude of collapses that would not even come close to falling within the earth movement exclusion. Even if the "water damage" language is isolated for purposes of the illusory coverage analysis, coverage is provided for any "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam[,]" except insofar as such an "accidental discharge" or "leakage of water" is otherwise excluded (as it is in this case). *Id.* "Water damage" is lumped in with a group of other potential causes of a collapse, virtually all of which could occur in the absence of earth movement. The notable

18

exception, of course, is "volcanic action," but the earth movement exclusion makes an explicit exception for that scenario, thereby permitting coverage for collapses caused by volcanic actions. (Document Nos. 17-2, p. 7, 21-2, p. 9). It is entirely possible for a discharge or leakage of water to cause a dwelling to collapse in the absence of earth movement. Thus, even coverage for a collapse caused by water damage can exist under the policy, provided that the collapse is not the result of an excluded event.

The Court acknowledges that some collapses caused by water damage would be excluded under the water damage exclusion of the policy. (Document Nos. 17-2, p. 7, 21-2, p. 9). State Farm has apparently chosen not to rely on the water damage exclusion. This may be due to its theory that the sinkhole which caused the collapse of the Plaintiffs' home was the result of mine subsidence rather than the result of broken water pipes. (Document No. 27, pp. 1-2). It may also be due to the apparent inapplicability of the water damage exclusion to the Plaintiffs' version of events, since water coming from broken pipes would most likely not constitute "*natural* water below the surface of the ground[.]" (Document Nos. 17-2, p. 7, 21-2, p. 9)(emphasis added); *Merz v. Allstate Insurance Company*, 677 F.Supp. 388, 389 (W.D.Pa. 1988)(interpreting a water damage exclusion which applied more generally to "water below the surface of the ground"). In any event, a coverage provision is not illusory if it covers some risk (i.e., at least one risk) reasonably anticipated by the parties. *Schwartz v. State Farm Mutual Automobile Insurance Company*, 174 F.3d 875, 879 (7th Cir. 1999). Not all accidental discharges or leakages of water directly resulting from "the breaking or cracking of any part of a system or appliance containing water or steam" would be excluded by either the earth movement exclusion or the water damage exclusion. (Document Nos. 17-2, pp. 5-7, 21-2, pp. 7-9). For instance, it does not

19

appear that a collapse caused by water damage originating within a dwelling (*above* the surface of the ground) would be excluded under either of the two exclusionary provisions. *Id.* Hence, the coverage provided for collapses is not illusory, even if the "water damage" category is isolated for purposes of the analysis.

The policy at issue in this case may be unorthodox in some respects, but parties are generally free to contract as they wish. *Cordry v. Vanderbilt Mortgage & Finance, Inc.*, 445 F.3d 1106, 1110 (8ᵗʰ Cir. 2006). The Plaintiffs admit that the collapse of their dwelling was caused by a "sinkhole." (Document No. 16, p. 2). Coverage for damages resulting from a sinkhole is unambiguously precluded by the earth movement exclusion. (Document Nos. 17-2, p. 7, 21-2, p. 9). The Court's inquiry can go no further. Accordingly, the Court must deny the Plaintiffs' Motion for Partial Summary Judgment (Document No. 15) and grant State Farm's Motion for Summary Judgment (Document No. 18).

An appropriate Order follows.

AND NOW, this 27th day of September, 2007, this matter coming before the Court on the Plaintiffs' Motion for Partial Summary Judgment (Document No. 15) and the Defendant's Motion for Summary Judgment (Document No. 18), IT IS HEREBY ORDERED that the Plaintiffs' Motion for Partial Summary Judgment (Document No. 15) is **DENIED**, and that the Defendant's Motion for Summary Judgment (Document No. 18) is **GRANTED**.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

21